MORRIS DIENSTAG, RELATOR, v. MARK M. FAGAN, MAYOR
OF JERSEY CITY, AND GEORGE M. McCARTHY, CITY
CLERK.

Submitted December 11, 1906—Decided February 25, 1907.

Members of a board of excise commissioners who are appointed by an
unconstitutional method do not become *de facto* officers by assum-
ing to act as such when it appears that there was a *de jure* board,
which, during the same time, were holding official meetings and
claiming to be the only legal board.

On rule to show cause for *mandamus*.

Before Justices FORT, PITNEY and REED.

For the relator, *Robert S. Hudspeth.*

For the respondents, *J. Merritt Lane.*

The opinion of the court was delivered by

REED, J.   This is on return to a rule to show cause why a
writ of *mandamus* should not issue to Mark M. Fagan, mayor
of Jersey City, commanding him to sign a certificate for
license purporting to have been granted to Morris Dienstag,
the relator, by the board of excise of Jersey City, and com-
manding George M. McCarthy, the city clerk of Jersey City,
to deliver said license to the relator.

The facts upon which the writ is prayed are embodied in a
stipulation signed by the counsel of the respective parties.
The material facts displayed by this stipulation are these:
Before July 24th, 1906, the excise board of Jersey City con-
sisted of members appointed by the mayor, by virtue of the
act of 1903. *Pamph. L., p.* 369.   On July 24th, 1906, the
Court of Common Pleas of Hudson county, acting under color
of the act of 1906 (*Pamph. L., p.* 199), appointed members
of the board of excise for Jersey City.   The members of the
latter board were recognized by the city clerk and chief of
police, but not recognized by the mayor or by the previous

excise board. Before any licenses were granted by this board a writ of *certiorari* was allowed to review the appointment of its members. Upon the return of the writ it was, on July 30th, dismissed, because the remedy sought by it was only obtainable by *quo warranto*. On the same day an information for a writ of *quo warranto* was filed, to which a demurrer was interposed, and the case was heard on August 7th. On August 11th an opinion was filed declaring that section 5 of the act of 1906, under color of which the second board was appointed, was unconstitutional. Judgment of ouster was entered August 13th. From this judgment a writ of error was taken by the defendants.

It is stipulated that from the time the second board was appointed on July 24th, 1906, to the day when the before-mentioned decision of the Supreme Court was rendered, both boards were meeting in Jersey City; that during the pendency of the writ of *certiorari* no licenses were granted by the second board.

It is further stipulated that before the appointment of the second board by the Court of Common Pleas the relator had applied to the old board—the mayor's board—for a license to do business as a saloonkeeper, and his application was refused. Two days after the appointment of the new board, namely, on July 26th, the relator applied to that board for a similar license. The application was in the regular form. It was received by the city clerk, together with the sum of $500, which sum is still retained by the city. The application was duly advertised, and at a meeting of the board, held on August 2d, the board adopted a resolution licensing the relator to keep a restaurant and sell spirituous and malt liquors. This resolution the mayor vetoed, and no action has been taken by the board since the veto.

It is also stipulated that it has been the practice for some years past that all resolutions of the excise board of Jersey City granting licenses shall be certified to the mayor for approval, and for the city clerk not to issue any licenses without such approval.

It is also stipulated that, although demanded by the relator, no certificate of license has been signed and delivered to him.

It is also stipulated that Mr. Fagan refuses to sign the certificate of license, and the city clerk refuses to deliver the certificate until it is so signed.

The ground upon which the counsel for the relator puts his right to a writ is that the board which granted the license was at the time a *de facto* licensing body. It is pointed out that there were offices existing previous to the act of 1906; that all the act of 1906 attempted to accomplish was to change the method of appointing the officers to fill these pre-existing offices, and that the act did not attempt to create new offices. It is thereupon insisted that where there is an office legally existing, and a person is appointed or elected to fill such office, his acts will be held valid as those of a *de facto* officer, although the statute has prescribed an unconstitutional method for the appointment or election of such officer. The doctrine thus stated as a general proposition is undoubtedly sound.

It is entirely settled that the lawful acts of an officer, so far as the rights of a third person are concerned, are, if done within the scope and by the apparent authority of the office, as valid and binding as if he were the officer legally elected and qualified for the office and in full possession of it. *State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom.* 195; *Unwin* v. *Jersey City,* 31 *Id.* 141; *Oliver* v. *Jersey City,* 34 *Id.* 634, 639.

This doctrine is upheld, not in the interest of the officer in fact, but is permitted to exist for the advantage of those who have dealt with such an official without knowing or being expected to know of his defective title.

It is, however, not every person who assumes to execute official functions who is to be classed as an officer *de facto,* and whose acts can be successfully invoked by a third person. If there is an officer or board of officers having legal title to the office, and claiming to be in possession of the office, and being present ready to exercise its functions, no other officer or board of officers can, during the same period, by any colorable appointment to such office, or by any acts in professed execution of the office, acquire a *de facto* character. Such person

or persons are but intruders into the office. In other words, where an officer by law is also an officer in fact, there is no room for any other officer in fact in the same office.

In the words of Judge Ira Harris, employed in *Morgan* v. *Quackenbush, 22 Barb.* 72, 80, there cannot be an officer *de jure* and another officer *de facto* in possession of the same office at the same time.

Similar language was used by Chancellor Walworth in *Boardman* v. *Halliday,* 10 *Paige* 223, 232.

In *Cronin* v. *Stoddard,* 10 *Hun* 524; *S. C., on appeal,* 97 *N. Y.* 271, a person named Bellaye was elected an excise commissioner, and failed to have his bond approved. Assuming that a vacancy thereby existed, one Kinne was elected to fill the assumed vacancy. Kinne joined in granting a license, he making a majority. It was held that there was no vacancy to be filled; that the Kinne appointment was a nullity, and that Bellaye was a *de jure* officer, and was performing the duties of his office, and therefore there was no place in which another could act.

In *School District* v. *Smith,* 67 *Vt.* 566, the expiration of the term of one Smith as treasurer of the school district was terminated upon the election of his successor. The court held that the election of Huse to succeed him was irregular. It was contended that Huse was nevertheless treasurer *de facto,* but the court held that Smith, being the officer *de jure* and in possession of the office, Huse could not be the officer *de facto,* as both could not be in possession at the same time.

In *City of Somerset* v. *Somerset Banking Co.,* 109 *Ky.* 549, a member of common council who failed to attend its meetings, and whose place was, because of his non-attendance, illegally filled by the remaining members, was held to remain a *de facto* as well as a *de jure* member, although he still failed to attend. It was held that a tax levied by said board would be set aside for want of a quorum, the appointee not being a *de facto* officer.

In *Powers* v. *Commonwealth,* 110 *Ky.* 386, it was held that when two persons were present at the seat of government, each claiming to be the governor *de jure,* and each assuming to

perform the duties of the office, the one who is governor *de jure* is also governor *de facto,* especially as affecting the validity of a granted pardon.

In *Steinbach et al.* v. *State,* 38 *Ind.* 483, it was held that when a new township trustee was elected and qualified, the former trustee was no longer in office *de jure* or *de facto.* The court said where there is one office there cannot be an officer *de jure* and one *de facto* in possession of such office at the same time.

In *McCohen* v. *Commissioners of Leavenworth,* 8 *Kan.* 437, there were two boards of commissioners. There was an old board, who were the *de jure* body, who had never been ousted or ceased to be *de facto* officers. A new board at the same time attempted to exercise the functions of the office. It was held that the new board could not thus become *de facto* officers.

In *Cohn* v. *Beale,* 61 *Miss.* 398, it was held that a warrant purporting to have been issued by a school superintendent was bad, because there was another *de jure* superintendent in possession of the office at the same time.

The rule illustrated in these cases is thoroughly and satisfactorily discussed in the case of *State* v. *Blossom,* 19 *Nev.* 312. In that case there was a contest between two boards of school trustees. Each board claimed to be the lawful officers, and each board proceeded as though the other board did not exist. It was held that the old board was the *de jure* board, and that the acts of the new board, before the statute under which they were elected had been declared unconstitutional, were invalid. The court said: "If the office is filled and the duties appertaining thereto performed by the officers *de jure,* another person, although claiming the office under color of title,.cannot become an officer *de facto."*

This rule has become incorporated in the text of the works of authority upon the subject of public officers. *Mech. Pub. Off.,* § 322; 5 *Am. & Eng. Encycl. L.* (*1st ed.*) 106.

The point now ·mooted has not been the subject of direct decision in our own courts, but the doctrine now declared, illustrated by the cases already cited from the decisions in other states, was here indirectly recognized by the Court of

Errors and Appeals in *Brinkerhoff* v. *Jersey City,* 35 *Vroom* 225.

In a previous case, namely, *Erwin* v. *Jersey City,* 31 *Vroom* 141, Erwin had been appointed corporation attorney for Jersey City, and took upon himself the performance of the duties of that office. He brought an action to recover compensation for his official services. Weart, his predecessor had, under the statute, the right to hold over until a successor was appointed. Weart claimed that Erwin had not received a legal appointment, and so that he, Weart, remained the *de jure* city attorney. He also claimed that he had performed the duties of the office..

The court found as a fact that Weart had abandoned the office, and so was not an officer *de facto.* It found also that Brinkerhoff performed the duties of the office. The court did not pass upon the *de jure* character of either, inasmuch as Erwin, being the only *de facto* officer, was entitled to the salary attached to the office under the rule established in *Stuhr* v. *Curran,* 15 *Vroom* 1.

In the case of *Brinkerhoff* v. *Jersey City, supra,* Brinkerhoff had been appointed by the board of finance of Jersey City to the office of corporation counsel, and had proceeded to perform such official duties as were required of him. Edwards, his predecessor, was entitled to hold over until a successor was legally appointed. Edwards claimed that Brinkerhoff was not legally appointed. He also claimed that he himself had continued to fill the office. The court, upon the assumption that both Edwards and Brinkerhoff had performed official duties, and were officers in fact, passed upon the legality of the appointment of Brinkerhoff, which of course involved the *de jure* character of each claimant. The court found that Brinkerhoff had a *de jure* title, and so sustained the verdict in his favor for the amount of the salary of the office.

The theory upon which this decision went was, inferentially, that notwithstanding that both Edwards and Brinkerhoff may have in fact executed such official duties as were required of each, yet Brinkerhoff, being also the officer *de jure,* was by reason of that fact the only officer *de facto.*

For the reason, therefore, that the old excise board appointed by the mayor was a *de jure* board, claiming to be a board entitled to execute the functions of the office and ready to do so, there was no room for the members of the new board to act as such. The license granted by the new board is a nullity.

A query is suggested arising out of another phase of the relator's case. By the form and fact of the information, it is assumed by the relator that his right to sell liquor is not complete until a delivery to him of a signed license. The query is whether this court would issue its prerogative writ to compel the execution of certain acts designed to perfect and complete a grant, when it appears that the body which voted for a license was utterly without legal authority to do so.

The rule to show cause is dismissed.