JOSÉ ANTONIO FERNÁNDEZ ANTONETTI, ETC., Petitioner, *v.* DISTRICT COURT OF PONCE, HON. RAMÓN A. GADEA PICÓ, JUDGE, Respondent; HEIRS OF DR. E. FERNÁNDEZ GARCÍA, Interveners.

No. 1821. Argued February 13, 1950.——Decided March 31, 1950.

---

152

*Leopoldo Tormes García* for petitioner. *Rafael Cuevas Ze-queira, Lionel Fernández Méndez, Manuel Orraca Torres,* and *R. Hernández Matos,* for intervener. *Vicente Géigel Polan-co, Attorney General,* and *Edgar S. Belaval, Assistant At-torney General,* as *amici curiae.*

MR. JUSTICE SNYDER delivered the opinion of the Court.

After a trial on the merits in a filiation suit by José Antonio Antonetti against the *Sucesión* of Dr. Eugenio Fernández García, the Tribunal of the Judicial District of San Juan entered judgment declaring Antonetti a recognized natural child of Dr. Fernández García. The judgment was affirmed by this Court. *Antonetti* v. *Fernández*, 68 P.R.R. 447. The Court of Appeals for the First Circuit dismissed an appeal from our judgment on November 9, 1948.

Thereafter, the *Sucesión* filed an independent suit against Antonetti. praying that the district court declare the foregoing judgment null and void. The complaint alleged that Jesús A. González, Assistant Attorney General of Puerto Rico, presided at the trial of the filiation case on November 20 and 26, 1946, and entered judgment in favor of Antonetti on January 23, 1947; that González acted under an *ultra vires* appointment by the Governor; that on the mentioned dates Borinquen Marrero was the Judge of the Family Relations Section of the Tribunal of the Judicial District of San Juan, was engaged in the performance of the duties of his office and was the only judge authorized by law to enter judgment in the filiation suit; that González acted knowing that (1) Judge Marrero was acting normally in the performance of the duties of his office, that (2) the Secretary of

the trial court had not certified to the Governor any facts which required the latter to direct some other district judge to hold court for the regular judge, that (3) he (González) was not a district judge and had not been confirmed as such by the Senate of Puerto Rico, and that (4) if the regular judge were incapacitated or unable to act, the district judge at large should act in his place. The complaint further alleged that even if the appointment of González were legal, the judgment was void because he never took the oath required by law.

The defendant moved for a summary judgment. With various certificates, affidavits and stipulations before it, the district court entered an order denying the motion. We granted certiorari to review this order. The Attorney General appears here as *amicus curiae* urging reversal of the order.

In denying the motion for summary judgment, the lower court said among other things that a genuine controversy exists as to the facts. We cannot agree. On the contrary, there is no dispute whatsoever on the facts as to the status of González and Judge Marrero on the dates in question. The only problem is whether under these uncontroverted facts the judgment entered by the former was void. Since that is purely a question of law, the district court, in passing on the motion for summary judgment, should have entered a final judgment in favor of the prevailing party. Rule 56, Rules of Civil Procedure; *Hettinger and Co.* v. *District Court,* 69 P.R.R. 128; see *González* v. *Gallardo, Commissioner,* 62 P.R.R. 263, 276, affirmed in 143 F.(2) 947 (C. A. 1, 1944). Cf. *Ramos* v. *People,* 67 P.R.R. 600; *Gaztambide* v. *Heirs of Ortiz,* 70 P.R.R. 388; *Boulon* v. *Pérez,* 70 P.R.R. 941.

By virtue of certificates, affidavits and stipulations, the lower court had before it, in passing on the motion of the defendant for summary judgment, the following uncontroverted facts: On November 15, 1946 the Attorney General

wrote the Governor submitting the name of Jesús A. Gonzá-lez, Assistant Attorney General, to act as substitute judge of the Tribunal of the Judicial District of San Juan, "during the absence of the Honorable Borinquen Marrero." The Attorney General had "granted a leave of fifteen days to the Honorable Borinquen Marrero Ríos, then Judge of the Tribunal of the District of San Juan, beginning November 18, 1946, pursuant to a verbal request made by the latter, and due to the fact that he had to devote all his time to the *study* of various cases submitted for his consideration as he expected in the near future his appointment as Associate Justice of the Supreme Court of Puerto Rico." (Italics ours.)

On November 18, 1946 the Governor signed an order which stated that in view of the fact that the Attorney General "has granted a leave of 15 days, beginning November 18, 1946" to Judge Marrero, the Governor hereby appoints González "to act as Substitute Judge" of the said court "during the absence of the Honorable Borinquen Marrero, or until further order." On January 17, 1947 the Acting Governor signed the following order:

"Whereas, the Hon. Borinquen Marrero, Judge of the Tribunal of the Judicial District of San Juan, will be absent from court January 21, 1947.

"Therefore, I, Rafael Buscaglia, Acting Governor of Puerto Rico, by virtue of authority vested in me by law, hereby designate Jesús A. González, Assistant Attorney General, to act as Substitute Judge of the Tribunal of the Judicial District of San Juan during the absence of the regular judge or until further order."

The records of the Tribunal of the Judicial District of San Juan show that the only judge who acted in the Family Relations Section from November 18, 1946 to November 26, 1946, both dates inclusive, and on January 23, 1947, was Substitute Judge González. These records also show that on these same dates Judge Marrero did not act in that Tribunal in any manner or form. Judge Marrero alone acted on January 24, 1947 in the Family Relations Section.

González did not take an oath of office in connection with his service as substitute for Judge Marrero. He took the oath required by law as Assistant Attorney General on June 29, 1945, and served in that post until April 19, 1949, when he was duly appointed district judge at large. The Secretary of the Tribunal of the Judicial District of San Juan made no request to the Governor for the designation of a judge to substitute for a Judge of that Tribunal during November, 1946 and January, 1947.

The Senate of Puerto Rico was not in session during the service of González in the trial court in connection with this case. While the filiation case was pending in the lower court, in this Court and in the Court of Appeals for the First Circuit, the *Sucesión* raised no objections to the appointments, the oath or qualifications of González to act as substitute judge for Judge Marrero in the said Tribunal on the dates or the trial and judgment. On January 23, 1947 the Acting Governor appointed González to act as Substitute Judge in the district court of Arecibo, beginning January 27, 1947 and during the absence of the regular judge or until further order, because of the illness of the latter.

After reciting the foregoing facts, the district court in its order stated that it had reached six conclusions of law. We shall discuss each of these conclusions during the course of this opinion. The first was that on the dates mentioned Judge Marrero "was exercising his functions as Judge of the Family Relations Section of the Tribunal of the District of San Juan . . . being on such dates, in the full performance of his duties, deciding cases submitted to his consideration."

However, the undisputed facts lead us to the opposite conclusion. The formal appointment of González by the Governor recites that he was appointing González to act during the absence of Judge Marrero because the Attorney General had granted Judge Marrero a leave of absence for 15 days, beginning November 18, 1946. And the records of the court show that on November 20 and 26 Judge Marrero did not,

and González did, act in the Tribunal. These statements on their face contradict the conclusion of the lower court.

The district court was nevertheless apparently of the view that only Judge Marrero could validly act because the Attorney General had indicated to the Governor that Judge Marrero had asked for a leave of 15 days in order to *study* pending cases submitted to him. We assume without deciding that this statement of the Attorney General can be held to modify the terms of the order of the Governor which states without qualification that González is being appointed because Judge Marrero will be absent on leave for 15 days. But even under that assumption, we are unable to agree that Judge Marrero was acting in the Tribunal during that period. On the contrary, he was withdrawing completely from the court on leave. The fact that Judge Marrero was studying, in contrast with deciding, submitted cases during his leave does not mean that he was performing the function of the Tribunal. That was merely the reason for granting him leave. The record discloses no intention that he should serve in the court during this period, either for the purpose of entering judgments and orders in cases already submitted to him which he was studying or for the purpose of hearing new matters. And the record shows that he performed no functions whatsoever in the court during this period.

We cannot agree with the *Sucesión* that the record demonstrates that Judge Marrero was to act in chambers during that period. See § 27, Code of Civil Procedure, 1933 ed. Nor does it show that he acted in chambers during that time. While the leave of absence of Judge Marrero was in effect, he ceased temporarily in the performance of the duties of his office and the appointment of a substitute became necessary. Otherwise, the leave granted to him would merely be equivalent to permission to the judge to suspend holding court, for which there is no provision under the law.

■ The problem as to the authority of González to act on January 23, 1947 requires separate examination. The *Suce-*

*sión* argues that the second appointment of González recites that Judge Marrero would be absent on January 21, whereas González did not act on the 21st but on the 23rd. But the second appointment does not provide that it was for the 21st. Rather it provides that González shall serve during the absence of Judge Marrero. The "whereas" clause reciting that Judge Marrero would be absent January 21 was not entirely accurate; but that did not affect the dispositive portion of the order appointing González while Judge Marrero was absent. And the records of the Family Relations Section disclose that González, not Judge Marrero, acted in that Tribunal on January 23rd. In the absence of a showing by the *Sucesión* that Judge Marrero was not absent on January 23, the second appointment authorized González to enter judgment in the filiation case on that date.

▆ In view of the foregoing, the district court was in error in its first conclusion of law that on the dates involved Judge Marrero was "in the full performance of his duties, deciding cases submitted to his consideration". On the contrary, the uncontroverted facts show that Judge Marrero was temporarily absent on the said dates. And once it is accepted that these are the facts, it is not disputed that the Governor was authorized to appoint a substitute judge for Judge Marrero under § 21 of the Code of Civil Procedure, 1933 ed. That is because § 21 provides for such an appointment when the regular judge cannot act because of "sickness or absence from the Island, or from any other cause . . .". And when the regular judge is absent on leave, the case obviously falls under the phrase "any other cause".

▆ However, even though we have found that the Governor was authorized under the facts herein to appoint a substitute judge for Judge Marrero pursuant to § 21, the question remains as to whether González was validly appointed as such substitute judge. In its second conclusion of law the district court held that his appointment was null on the theory that in the event of illness, disqualification or absence of one

of the regular judges of the San Juan Tribunal, under our statutes he may be temporarily replaced only by one of the district judges at large, another judge of the San Juan Tribunal, or a judge of one of the other district courts of Puerto Rico. For reasons presently to be noted, we think this conclusion of law was erroneous.

The Tribunal of the Judicial District of San Juan was created by Act No. 212, Laws of Puerto Rico, 1946.[1] Section 8 provides that another judge of the Tribunal shall act instead of the regular judge of one of the Sections if the latter disqualifies himself in a particular case. But § 8 is confined to disqualification. It makes no mention of providing a substitute for the regular judge of one of the Sections if he is absent on leave or otherwise.

Section 16 of Act No. 212 provides that, except for the case of disqualification which is covered by § 8, § 3 of Act No. 63, Laws of Puerto Rico, 1940, shall be applicable to the judges of the San Juan Tribunal.

Section 1 of Act No. 63 creates the office of district judge at large. Section 3, as amended by § 2 of Act No. 143, Laws of Puerto Rico, 1942, reads as follows:

"Upon proper written authorization by the Attorney General of Puerto Rico, the district judge at large shall substitute the judge of any district court in the Island in civil or criminal cases in which, on account of the illness, disability, inhibition, or absence of the regular judge of the corresponding district court, or because the said office is vacant, such substitution may be proper; *Provided,* That if, in case of accumulation or urgency of business, any district judge is unable to perform speedily the work of his district, the Attorney General shall designate and assign the said district judge at large to act as an additional district judge in such district, to discharge all the judicial duties of a judge therefor such time as the business of said district may require; *Provided, further,* That in such cases, the district judge at large shall have the same powers, duties, and authority as are vested in the judge of a district court."

---

[1] See Act No. 58, Laws of Puerto Rico, 1930.

Section 6 of Act No. 63, as amended by Act No. 143 of 1942, provides that "Nothing herein contained shall be so construed as to abrogate or in any manner impair or affect the provisions contained in Section 21 of the Code of Civil Procedure in force in Puerto Rico."

Section 21 of the Code of Civil Procedure, 1933 ed., reads as follows:

"A district judge may hold court in any district in Puerto Rico upon the request of the judge of the district in which such court is to be held; and when, by reason of sickness or absence from the Island, or from any other cause, a court cannot be held in any district by the judge thereof, a certificate of that fact must be transmitted by the secretary to the Governor, who may thereupon direct some other district judge to hold such court; *Provided,* That if the regularly appointed judge is otherwise engaged, the Governor may appoint a substitute judge to act during the time the regular judge shall be disqualified; *Provided, further,* That the Governor, on recommendation of the Attorney General, may, if the public service so requires direct that one or more of the district judges of one or more district courts be temporarily transferred to any district court in the Island where the public service so requires; *And, provided, further,* That the transfer of a judge from one court to another, in accordance with the foregoing provisions, shall never exceed thirty (30) days."

One of the reasons why the Legislature specifically provided in § 6 of Act No. 63 that § 21 of the Code of Civil Procedure shall remain in force, despite the passage of § 3 of Act No. 63 providing for a district judge at large, was obviously to permit the Governor to continue to make appointments pursuant to § 21 in those situations where the district judge at large was not available.[2] Section 21 provides that

---

[2] Act No. 339, Laws of Puerto Rico, 1947, created two additional district judgeships at large. It does not affect our problem as §§ 3 and 7 thereof are substantially identical to §§ 3 and 6, respectively, of Act No. 63 of 1940, as amended by Act No. 143 of 1942. Section 21 of the Code of Civil Procedure would therefore come into play when none of the three judges at large was available.

where a district judge is unable to act because of sickness, absence or any other cause and the secretary of the court transmits a certificate to that effect to the Governor, the latter may direct some other district judge to hold court for the regular judge. But the Legislature foresaw that a regular judge from another district court might not be available for this purpose. It therefore inserted immediately thereafter the following: *"Provided,* That if the regularly appointed judge is otherwise engaged, the Governor may appoint a substitute judge to act during the time the regular judge shall be disqualified . . . ."

We think the quoted *proviso* means that under § 21 the Governor may go outside the regular judiciary in selecting a substitute judge to take the place temporarily of a regular judge who is unable to serve for a short period. This becomes even clearer when we note the manner in which the Legislature used the phrase "substitute judge". Wherever § 21 contemplates use of a regularly appointed judge, it recites that the Governor shall "direct" such a judge to serve outside his district. This contrasts with the terminology of the first *Proviso* of § 21 that the Governor will *"appoint* a substitute judge". Moreover, we take judicial notice that it has been the administrative practice for a number of years for the Governor under appropriate circumstances to appoint pursuant to the first *Proviso* of § 21 substitute judges who are not members of the regular judiciary. Frequently an Assistant Attorney General has been so designated. And the Legislature was undoubtedly aware of this practice when it specifically provided in § 6 of Act No. 63, as amended by Act No. 143 of 1942, that § 21 shall remain intact despite the creation of the post of district judge at large.

Although we did not discuss the problem in detail, we have held that an attorney or an Assistant Attorney General may be appointed under § 21 as a substitute for a regular district judge while the latter is on leave. *Balbaño* v. *Cintrón,* 53

P.R.R. 802, 805; *García* v. *Suárez*, 56 P.R.R. 394, 401. In both these cases *Annoni* v. *Blas Nadal's Heirs*, 94 F.(2) 513 (C.A. 1, 1938), discussed hereinafter in detail, was considered and found distinguishable. And in the language at pp. 514–15 of the *Annoni* case we think the Court of Appeals intimates that in the absence of the regular judge appointment of a substitute judge from outside the regular judiciary is proper. *Cf.* Section 2 of the Act of March 10, 1904, Laws of Puerto Rico, 1904, pp. 104–5.[3]

We agree that under the statutes quoted above an appointment of a district judge or a district judge at large would have been proper under the circumstances of this case. And one of the other judges of the San Juan Tribunal could have acted for Judge Marrero. See *Portela* v. *District Tribunal*, 66 P.R.R. 268. But in the absence of proof to the contrary, it must be presumed that the Governor complied with the law. The proof of the *Sucesión* only showed that the other judges of the San Juan Tribunal, the various district judges and the district judge at large were acting at that time; it established nothing as to the state of their work. We must therefore presume that all these regular judges "were otherwise engaged", making necessary the appointment of a substitute judge who was not a member of the regular judiciary, as provided by § 21 of the Code of Civil Procedure. See *Hiatt, Warden* v. *Brown*, 339 U. S. 103.

---

[3] We reach this result in construing the English version of § 21, as it was originally enacted in that language. Laws of Puerto Rico, 1904, p. 194. However, we note in passing that, although it is a somewhat inaccurate translation, the Spanish version of § 21 is even clearer in support of our conclusion. In Spanish the first *Proviso* reads as follows: "*Disponiéndose*, que si los jueces propietarios estuviesen impedidos por razón de sus ocupaciones, el Gobernador nombrará un juez sustituto para actuar durante el tiempo en que el juez propietario no pueda hacerlo". If this version were controlling, a proper translation of it into English would be as follows: "*Provided*, that if the regularly appointed judges are otherwise engaged, the Governor will appoint a substitute judge to act during the time the regular judge is unable to act." In any event, under both the Spanish and English versions of § 21, we reach the same result.

■ The *Sucesión* contends that the first *Proviso* in § 21 means that if the regular judge of a district court cannot act, the Governor may appoint *one of the other regular district judges* for the period during which the regular judge cannot act. It argues that its theory is reinforced by the last *Proviso* of § 21 that transfers of a judge from one court to another, *in accordance with the foregoing provisions*, shall not exceed thirty days. For the reasons already noted, we cannot agree with this interpretation of § 21. We hold, contrary to the second conclusion of law of the district court, that the Governor was authorized to appoint Assistant Attorney General González as a temporary substitute judge for Judge Marrero under the facts herein pursuant to the first *Proviso* of § 21.

■ The *Sucesión* also argues that González was not validly appointed because the Secretary of the San Juan Tribunal did not send the Governor the certificate required by § 21. The district court made no mention of this requirement in its order. We assume that in § 21 the Legislature meant to provide that this requirement applies when the Governor acts under the first *Proviso*. But § 14 of the Organic Act, 48 U.S.C. § 778, provides in part that "the attorney general shall have charge of the administration of justice in Porto Rico . . .". Pursuant to § 49, the Secretaries of the district courts have always been considered to be subordinates of the Attorney General for administrative purposes. Section 21 must be read in the light of those circumstances. It is immaterial whether the Governor receives the notice of the necessity for an appointment directly from the Secretary or through the latter's superior, the Attorney General. Indeed, it is more in keeping with proper administration for the notice to come to the Governor from the Attorney General rather than directly from the Secretary. Consequently, we think the notification by the Attorney General to the Governor that Judge Marrero would be on leave in November was sufficient

compliance with the requirement of § 21 for a certificate by the Secretary. In addition, even if the Attorney General had not transmitted such a notice to the Governor, the appointments would not be void. The provisions for notice is purely administrative. Consequently, if the matter comes to the attention of the Governor without such a formal notice, he is authorized by § 21 to remedy the situation by appointing a substitute judge.

The next point made by the *Sucesión* concerns § 49 of the Organic Act, 48 U.S.C. § 873. We have interpreted § 21 to mean that the Governor, without the consent of the Senate, is authorized to appoint for a temporary period a substitute judge who is not a member of the regular judiciary. The *Sucesión* argues that § 21 as thus construed violates § 49 of the Organic Act. The latter Section provides that judges "whose appointment by the President is not provided for by law, shall be appointed by the governor, by and with the advice and consent of the Senate of Porto Rico." The district court agreed with the *Sucesión*, stating in its third conclusion of law that the appointments of González were in violation of § 49 because he was not appointed with the consent of the Senate.

Section 26 of the Organic Act, 48 U.S.C. § 812, provides that recess appointments of judges may be made by the Governor alone and are "effective either until disapproved or until the next adjournment of the senate for the session." See *González* v. *District Court*, 62 P.R.R. 152, 154–55. But §§ 49 and 26 apply only to regular fixed-term appointments or recess appointments therefor while the Senate is not in session. We cannot agree that these Sections prohibit the Legislature from making a supplementary provision for appointment by the Governor alone of substitute judges who will act for a brief period in an emergency to avoid a temporary breakdown in the administration of justice. Under these circumstances, a recess appointment is not possible because

there is no vacancy in the permanent office. Such a provision is in accord with the doctrine that the law abhors vacancies because they disrupt continuity of administration of public office. See *Chandler* v. *Chandler*, 140 P. 858 (Kans., 1914); Annotation, L.R.A. 1916E. 834, 836; *González* v. *District Court, supra*, pp. 155, 157.

This question was not specifically discussed in *Annoni* v. *Blas Nadal's Heirs, supra*. In that case an Assistant Attorney General was appointed to act as a substitute judge in a district court because the regular judge thereof disqualified himself. The Court of Appeals held that he could not act in view of the provision in § 84 of the Code of Civil Procedure that when an action is pending in a district court and the regular judge is disqualified for any reason from hearing it, it *must* be transferred to another district court. To the same effect, *Saavedra* v. *District Court*, 43 P.R.R. 274. But this was not a holding that § 49 of the Organic Act prohibits insular legislation such as § 21 of the Code of Civil Procedure which permits the temporary appointment of a substitute judge by the Governor alone. On the contrary, the only language of the Court of Appeals which might be applicable on this point looks the other way. After stating that where the district judge is disqualified to hear a *single pending case*, the case *must* be transferred to another district court pursuant to § 84 of the Code of Civil Procedure, the court said at p. 515: "The only office that can be filled by the Governor by the appointment of a substitute is one to which a substitute may be appointed so long as the conditions defined in Section 2 of the act reorganizing the Judiciary of Puerto Rico, or in Section 21 of the Code of Civil Procedure 1911, Rev. St. & Codes 1913, § 5005, may exist and to transact all judicial business that in the ordinary course may come before it."[4]

---

[4] Antonetti also argues that since the Senate was not in session during the periods of Judge González's service, the appointments of the latter can be upheld as recess appointments authorized by § 26 of the Organic Act. But we cannot read a temporary substitute appointment as a recess

We hold, contrary to the third conclusion of law of the district court, that § 49 of the Organic Act does not prohibit the Legislature from providing, as it did in § 21, that the Governor, without the consent of the Senate, may appoint a substitute judge for a temporary period. No further attacks are made on the validity of the appointments of González. We therefore conclude that he was validly appointed by the Governor pursuant to § 21 of the Code of Civil Procedure to serve during the periods involved as a substitute judge for Judge Marrero.

However, the *Sucesión* contends that even if we find that the appointments of González were valid, the judgment in the filiation proceeding is void because González failed to take an oath of office as substitute judge, as required by § 10 of the Organic Act, 48 U.S.C. § 874, and § 186 of the Political Code, as amended by Act No. 93, Laws of Puerto Rico, 1936. The district court agreed with this contention. It held in its fifth conclusion of law that González's failure to take the oath made all his actions as substitute judge null.

Antonetti and the Attorney General, who appears here as *amicus curiae* in support of Antonnetti's position, point out that § 186, as amended by Act No. 93, requires exactly the same oath of all executive, legislative and judicial officials.[5] They therefore argue that the oath which González took as Assistant Attorney General was sufficient to cover his serv-

---

appointment. Moreover, a recess appointment is possible only while the Senate is not in session to fill a vacancy or to displace an officer whose term has expired under legislation providing for a fixed term without a holding-over clause. *González* v. *District Court, supra.* And here Judge Marrero, although temporarily absent, still held legal title to the office under an unexpired term.

[5] Section 186, as amended by Act No. 93, is not correctly translated in the English version. It should read in part that "The members of the Legislature of Puerto Rico, all executive, administrative and judicial officials, and all employees of the Insular Government of Puerto Rico, its dependencies, boards, commissions, and organizations created by law, shall before they enter upon the duties of their respective offices or employments, take and sign the following oath or affirmation . . . .".

ice as substitute judge and that it was unnecessary for him to repeat this oath merely because of the difference in the nature of his work as judge. Consequently, they insist that González was a *de jure* judge despite his failure to take a special oath as such. They assert that this case is like that of a regular district judge who is directed to act in another district pursuant to § 21 of the Code of Civil Procedure. They contend that neither such a regular district judge nor González under the circumstances of this case is required to take an oath to serve as substitute judge. But *cf. People* v. *Juliá et al.*, 25 P.R.R. 262, 267.[6]

Antonetti and the Attorney General make an alternative argument in support of their theory that González acted as a *de jure* judge in the filiation case. They contend that under the minority rule, which they urge us to adopt, the failure to take an oath does not deprive an officer of his *de jure* character unless and until he is challenged as such in an appropriate proceeding filed by the State.

However, we conclude hereinafter that the judgment in the filiation suit is valid on the ground that González acted as a *de facto* judge in hearing the case and entering judgment. We therefore find it unnecessary to consider the contention that he served as a *de jure* judge in that case despite his failure to take a special oath as substitute judge.

---

[6] The *Sucesión* might conceivably reply that the executive, legislative and judicial branches of government operate independently of each other under the doctrine of separation of powers, *Buscaglia* v. *District Court of San Juan*, 145 F.(2) 274, 283–84 (C.A. 1, 1944), cert. denied 323 U. S. 793; that the provision in § 14 of the Organic Act that the Attorney General shall have charge of the "administration of justice" does not contemplate that he shall supervise the judicial, as distinguished from the administrative work of the courts; that González took his original oath in connection with his duties in the executive branch as a subordinate of the Attorney General; and that if he is to lay aside temporarily these subordinate duties in order to perform outside the supervision of the Attorney General the different and independent functions of a judge in a separate branch of government, he must take a special oath therefor. For reasons noted in the body of the opinion, we leave this question open.

We turn to the problem of whether González acted as a *de facto* judge in the filiation proceeding. In its fourth conclusion of law the district court held that González did not act as a *de facto* judge in that case. The *de facto* doctrine is a principle of law which imparts validity to the official acts of persons who, under color of authority, exercise lawfully existing offices, in which the public or third persons are interested, where the performance of such official acts is for the benefit of the public or third persons, and not for their own personal advantage. The necessity for this doctrine is manifest: it would be unreasonable to expect the public to inquire beforehand into the title of the officers with whom they propose to deal, in order to ascertain whether or not reliance may be placed on their assumed authority. *Dalton* v. *Fabius River Drainage Dist.*, 184 S. W. (2) 776, 782 (Mo., 1945); *Mansur* v. *Morris*, 196 S. W. (2) 287, 295 (Mo., 1946); *State* v. *Levy*, 34 A (2) 370 (Vt., 1943); Constantineau on the De Facto Doctrine, §§ 1–3, pp. 3–5; Jarrett, De Facto Public Officers: The Validity of Their Acts and Their Rights to Compensation, 9 So. Calif.L.Rev. 189, 217, *et seq.*

There are three requisites which must be fulfilled before a person can be held to be a *de facto* officer. First, there must be a *de jure* office in order to have a *de facto* officer. *Norton* v. *Shelby County*, 118 U. S. 425, 441, *et seq.; Annoni* v. *Blas Nadal's Heirs, supra*, p. 515, and cases cited; *Howell* v. *Howell*, 208 S. W. (2) 22 (Ark., 1948); *Bodcaw Lumber Co. of Louisiana, Inc.* v. *Jordan*, 14 S.(2) 98, 101 (La., 1943); Annotation, 99 A.L.R. 294; *Anderson* v. *State*, 195 S. W. (2) 368, (Tex., 1946); Constantineau, *supra*, § 26, p. 39; 2 Dillon on Municipal Corporations, 5th ed., § 518, p. 841. *Cf.* Jarrett, *supra*, pp. 201–11; 86 U. Pa. L. Rev. 551; *Kimble* v. *Bender*, 196 A. 409, 415 *et seq.* (Md. 1938).

We believe there can be no question as to the existence of a *de jure* office here. The position of Judge of the Family

Relations Section of the Tribunal of the Judicial District of San Juan was duly created by Act No. 212, Laws of Puerto Rico, 1946; see *Portela* v. *District Tribunal*, 66 P.R.R. 268. And the appointments of González authorized him to act as substitute judge in all matters pending in that Section during the absences of the regular judge thereof.

The *Annoni* case is distinguishable. As we have already seen, in that case an Assistant Attorney General had been appointed to hear a pending case because the regular district judge had disqualified himself. The Court of Appeals held that the judgment entered after a hearing on the merits by the said substitute judge was void. It found that he was not a *de facto* judge because there was no *de jure* office to be filled. Its reasoning on this point was as follows (p. 515): "There is no *de jure* office to be filled under the Puerto Rican statutes in case a regular judge is disqualified to hear a single *pending case*. The case *must* be transferred to another district in accordance with the provisions of section 84. The only office that can be filled by the Governor by the appointment of a substitute is one to which a substitute may be appointed so long as the conditions defined in section 2 of the act reorganizing the Judiciary of Puerto Rico, or in section 21 of the Code of Civil Procedure 1911, Rev. St. & Codes 1913, § 5005, may exist and to transact all judicial business that in the ordinary course may come before it. There being no *de jure* office to be filled, Pérez was neither a *de jure* nor a *de facto* judge. . . ."

The instant case is precisely the situation envisaged by the Court of Appeals where § 21, and not § 84 of the Code of Civil Procedure, comes into play. As the Court of Appeals points out, an appointment of a substitute judge as in this case under § 21 to replace temporarily the regular judge would be an appointment to a *de jure* office. We therefore think it is clear that the first requirement for a *de facto* officer—that a *de jure* office exist—was fulfilled in this case.

The second requisite for a person to be a *de facto* officer is that he be in actual possession and control of the office to the exclusion of the *de jure* officer. This requirement is fulfilled even though a *de jure* officer holds title to the office. That is to say, it means actual and physical possession of the office by one ready to act, as distinguished from the legal or technical possession that the *de jure* officer is considered to have. *Gilormini* v. *Heirs of Padilla*, 63 P.R.R. 580; *People* v. *Díaz*, 36 P.R.R. 514, 519–20; *Dienstag* v. *Fagan*, 65 A. 1011 (N. J., 1907); 140 Am. State Reports 164, 189–91; Mechem on Public Officers, § 322, p. 216; Constantineau, *supra,* § 75, pp. 113–14.

There is no doubt from the record that González was in physical possession of the post on the dates in which he acted in this case. Of course his possession would be that of an intruder if the regular judge was actually in possession when he acquired it. See *González* v. *District Court, supra,* p. 170. But the record shows the contrary. Judge Marrero was on leave of absence during the November period while González was acting in the filiation case. And he was likewise absent on January 23, 1947 when González entered judgment. Judge Marrero was therefore not in actual possession of his office and ready to act during these periods. And González was in possession and therefore fulfilled the second requisite for a *de facto* officer.

The third requisite is that the alleged *de facto* officer must be discharging his functions under color of authority. "By color of authority is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer." *State* v. *Oates*, 57 N. W. 296, 297 (Wisc., 1893); *United States* v. *Royer*, 268 U. S. 394, 397; *Waite* v. *Santa Cruz*, 184 U. S. 302, 322–24; *McDowell* v. *United States*, 159 U. S. 596, 601; *People* v. *Pietrantoni*, 30 P.R.R. 715, 717; *Schoonover* v. *City of Viroqua*, 14 N. W. (2) 9 (Wisc., 1944); *McKenna* v. *Nichols*, 175

S. W. (2) 121 (Ky., 1943); *United States* v. *Lindsley*, 148 F.(2) 22 (C. A. 7, 1945); *Ridout* v. *State*, 30 S. W. (2) 255 (Tenn., 1930); *Rockingham County* v. *Luten Bridge Co.*, 35 F.(2) 301, 306–7 (C. A. 4, 1929); *Sawyer* v. *State*, 113 S. 736, 744–5 (Fla., 1927); *In re Krickbaum's Contested Election*, 70 A. 852 (Pa., 1908); 37 Am. State Reports 832; Jarrett, *supra*, p. 191 *et seq.*; Mechem, *supra*, § 319, p. 214; Throop on Public Officers, § 623, p. 587. And see *González* v. *District Court, supra; Heyward* v. *Long*, 183 S. E. 145, 151 (S. C., 1935).

 The *Sucesión* concedes that González received appointments as substitute judge, duly issued by the Governor. However, it contends that the defects in these appointments made them insufficient as the basis for action by González as a *de facto* judge. But the fact that an appointment may be defective in some respects does not prevent action thereunder as a *de facto* officer. Here the Governor had the power to appoint a substitute judge for Judge Marrero pursuant to § 21 of the Code of Civil Procedure. The Governor was therefore not acting without any authority of law whatsoever. As we have seen, the *Sucesión* argues (1) that under the facts herein, there was no occasion to appoint a substitute judge as Judge Marrero was "in the full performance of his duties . . ." during the periods in question; (2) that under § 21 the Governor could not go outside the regular judiciary for the appointment of a substitute judge; (3) that González was not validly appointed because the Secretary of the Tribunal did not send the Governor the certificate required by § 21; and (4) that § 49 of the Organic Act prohibits temporary appointments of substitute judges by the Governor alone. As already noted, we do not agree with any of these contentions. But even if we agreed with one or more of the last three contentions, under the foregoing authorities they would not be such defects as would invalidate action by González as a *de facto* officer. The appointments were therefore

effective at least for the purpose of giving González color of authority to act as a *de facto* officer.

We think we should also note that a person does not become a *de facto* officer by acting in the office as a mere usurper or intruder on a single occasion without any color of authority whatsoever. He must, in the language of the cases, have the reputation of holding the office in which he was acting. *United States* v. *Royer, supra; Waite* v. *Santa Cruz, supra; Hussey* v. *Smith*, 99 U. S. 20, 24; *City of Tulsa* v. *Johnson*, 163 P.(2) 993, 995 (Okla., 1945) ; Annotation, 161 A.L.R. 967; Annotation, 158 A.L.R. 529, 531–32; Ann. Cas. 1913C 1042, 1046–47; 25 L. ed. 314; 140 Am. State Reports 164, 168; Jarrett, *supra*, p. 194. *Cf. City of Lawrence* v. *MacDonald*, 62 N. E. (2) 850 (Mass., 1945), criticized adversely in 59 Harv.L.Rev. 139. But as we have seen, González acted over a period of weeks in all the cases before the Family Section of the San Juan Tribunal under appointments duly made by the Governor pursuant to an administrative practice of many years' standing. He had the reputation under those circumstances of being a judge. We therefore cannot hold that he was an interloper who seized the court for a single act.

Finally, the *Sucesión* argues that González could not act as a *de facto* judge even if he was validly appointed because he failed to take a special oath as a substitute judge. We have left open the question of whether he would be a *de jure* officer without taking an oath of office. We did so because the authorities are virtually unanimous that the failure to take the oath of office does not prevent an official who has the other necessary requisites from acting as a *de facto* officer. *Wright and Wade* v. *United States*, 158 U. S. 232, 238; *De Jan* v. *De Jan*, 18 F. (2) 690 (C. A. 5, 1927) ; *Davenport* v. *Davenport*, 41 S. 240 (La., 1906) ; *Tower* v. *Whip*, 44 S. E. 179, 182 (W. Va., 1903) ; *In re Krickbaum's Contested Election, supra;* 140 Am. State Reports 164, 176–77; L.R.A.

1918 B 1124; Constantineau, *supra*, § 129, p. 191; Throop, *supra*, § 630, p. 596; McCrary on Elections, 4th ed., § 251, p. 189.

The district court cites several of our cases in support of its conclusion that González did not act as a *de facto* judge in the filiation case. *People* v. *López*, 67 P.R.R. 732, and *Alcázar* v. *District Court*, 67 P.R.R. 680, have nothing to do with this problem. *Gilormini* v. *Heirs of Padilla*, *supra*, is clearly distinguishable. In that case the district judge of Guayama heard a case. Before entering judgment, he was appointed district judge of San Juan. He assumed the duties of his new office and his successor as district judge of Guayama was appointed and qualified. Nevertheless, thereafter the judge before whom the case was originally tried entered judgment. We reversed the judgment despite the argument that it was decided by a *de facto judge*. We pointed out, as already noted, that (p. 581) " A *de facto* officer can not exist when the office is filled and discharged by a *de jure* officer." *Banuchi* v. *District Court*, 64 P.R.R. 107, was decided on the basis of its peculiar facts. We held that a justice of the peace did not have jurisdiction and that his decisions were therefore void. There is no discussion of the *de facto* doctrine in that case. We find nothing in *The Bonnie Fruit Co.* v. *Dávila et al.*, 7 P.R.R. 430, 434, *People* v. *Díaz et al.*, 18 P.R.R. 878, or *Fabián* v. *Rossy et al.*, 22 P.R.R. 734, 740, which supports the conclusion of the district court. We therefore hold, contrary to the fourth conclusion of law of the trial court, that González acted as a *de facto* judge in the filiation proceeding.

██ It remains only to dispose of the sixth and last conclusion of law of the district court in which it held that the *Sucesión* could, as it was attempting to do here, attack collaterally the judgment in the filiation case because it was entered without jurisdiction. The authorities cited by the lower court—§ 429, Code of Civil Procedure, 1933 ed.; *Ro-*

mán v. *Municipal Court*, 59 P.R.R. 483; *People* v. *López, supra*—permit such an attack on a judgment entered without jurisdiction. But what we have already said concerning the validity of González's actions as a *de facto* judge is a sufficient answer to the contention that he lacked jurisdiction to hear the case and to enter the judgment of filiation.

Perhaps the *Sucesión* could have questioned the validity of González's appointment as a substitute judge during the course of the filiation proceeding. Annotation, 144 A.L.R. 1207, 1214. *Cf. National Bank of Washington* v. *McCrillis*, 130 P.(2) 901 (Wash., 1942). But it failed to do so, although it knew or should have known all the alleged defects in González's status at that time. It remained silent while the case was being litigated in the San Juan Tribunal, this Court and the Court of Appeals. If it had won the merits, it would have been the first to support the authority of González to decide the case. Having lost, it now wishes to ignore everything that has gone before and start all over again. But since it did not raise this issue in the filiation case, it cannot now make a collateral attack on the judgment, provided González fulfilled the requirements of a *de facto* judge. *In re Manning*, 139 U. S. 504; Restatement, Judgments, § 7, pp. 41, 45–46; 1 Freeman on Judgments, 5th ed., § 327, p. 654. Cf. 59 Yale L. Rev. 345. Indeed, one of the purposes of the *de facto* doctrine is precisely to avoid such a contingency.

 The *Sucesión* contends that the writ of certiorari was improvidently issued. Its first point is that the petition was not verified by Antonetti, as required by § 672 of the Code of Civil Procedure and § 470 of the Code of Criminal Procedure, 1935 ed. But we have held that the filing of the return of the lower court cures this defect. *Ortiz* v. *Peace Court*, 53 P.R.R. 37, 43.

 The *Sucesión* also argues that the petitioner has an adequate remedy at law and that the order is not reviewable by certiorari. These contentions are not tenable in view

of *Pérez* v. *District Court*, 69 P.R.R. 4. Nor can we agree with the argument of the *Sucesión* that in answering the complaint and in taking other action in the district court Antonetti waived his right to file a petition for certiorari in this Court.

 As noted earlier in this opinion, there is no genuine controversy as to the facts. The district court therefore should have granted the motion of the defendant Antonetti for a summary judgment in his favor. And on certiorari we are authorized to enter the final judgment which the district court should have entered. *Pérez* v. *District Court, supra*, p. 17; *Hettinger & Co.* v. *District Court, supra.*

For the reasons stated, the order of the district court denying the motion of the defendant for a summary judgment will be vacated, and a summary judgment for the defendant will be entered.

Mr. Justice Marrero and Mr. Justice Negrón Fernández did not participate herein.