## Hussey *v.* Smith.

An incorporated town in Utah was situate on public lands, which were duly
entered at the proper land-office by the mayor, to whom a patent was issued
under the act of March 2, 1867 (14 Stat. 541).   The legislature of the Terri-
tory, as authorized by that act, enacted the requisite rules and regulations
for the disposal of the lots in the town, and provided that the party who
was the rightful owner of possession, or occupant, or was entitled to the
occupancy or possession of a lot, should on certain conditions be entitled to
a deed therefor from the mayor.   A mode whereby contesting claims should
be determined was prescribed.   A., before the lands were entered, was in the
possession of a lot, and mortgaged it to B., but thereafter remained in pos-
session.   In a foreclosure suit brought in the proper court against A., wherein
the process sued out was served by the marshal of the United States for that
Territory, a decree was rendered whereunder he, still acting as the ministerial
officer of that court, under the decision of the local courts that he was en-
titled so to do, made sale of the lot to C.   The sale was confirmed by the
court, and C. conveyed the lot to D., a non-resident.   A. and D. respectively
claimed a deed from the mayor.   *Held*, 1. That A.'s interest in the lot, before
the lands were entered, could be the subject of a sale or mortgage.   2. That
although this court subsequently decided that the marshal could act only
in cases where the United States was concerned, his doings in the premises
were those of an officer *de facto;* that by his service of the process the court
acquired jurisdiction of the person of A.; that the sale under the decree ex-
tinguished A.'s right to the lot; and that D. was entitled to a deed therefor
from the mayor.

Appeal from the Supreme Court of the Territory of Utah.

The act of March 2, 1867, entitled " An Act for the relief
of the inhabitants of cities and towns upon the public lands,"
approved March 2, 1867 (14 Stat. 541), provides : Whenever

any portion of the public lands of the United States have been or shall be settled upon and occupied as a town site, and therefore not subject to an entry under the agricultural pre-emption laws, it shall be lawful, in case such town shall be incorporated, for the corporate authorities thereof, and if not incorporated, for the judge of the county court for the county in which such town may be situated, to enter at the proper land-office and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests, the execution of which trust, as to the disposal of the lots in such town and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated, &c.

In accordance with this act the legislature of Utah, by an act approved Feb. 17, 1869, made the necessary "rules and regulations;" and in November, 1871, Daniel Wells, as mayor of the city of Salt Lake, entered certain lands in that Territory as "the town site" of said city, wherein was included the lot which is in controversy in this suit. On the thirtieth day of September, 1868, Job Smith, then and for many years prior thereto in possession of the lot, and the owner thereof, subject only to the paramount title of the United States, executed to one Bernhisel a mortgage of all "his right of possession, claim, and interest in and to the lot," to secure the payment of a certain sum of money in one year thereafter. In September, 1869, Smith executed another mortgage of the lot to one Linforth, to secure the sum of $1,058.43, payable twelve months from that date. On the third day of December, 1870, Bernhisel filed his bill of foreclosure in the District Court of the third judicial district of that Territory against Smith and Linforth. The process sued out was served by the marshal of the United States for the Territory. A decree was rendered by default in favor of Bernhisel. Pursuant thereto the marshal sold the lot, and on the thirteenth day of March, 1871, the court, on his report of his doings, approved and confirmed the sale to William Jennings, to whom the marshal made a deed for the lot. Jennings conveyed it, March 9, 1872, to Hussey, a resident of the State of Ohio.

Smith remained in possession of the lot, and Dec. 11, 1872, filed in the Probate Court his written statement, pursuant to said act of the Territory, claiming that he, under its provisions, was entitled to a deed, and praying that he be adjudged to be the lawful owner. Hussey filed a similar statement, which was amended May 24, 1872.

It was adjudged that Smith was entitled to a deed from the mayor of the city of Salt Lake, and that a certificate of title should issue to him therefor. To the same effect was the judgment of the District Court and that of the Supreme Court. Hussey then appealed here.

*Mr. Samuel A. Merritt* in support of the decree below.

1. Hussey, being a non-resident of Salt Lake City, was not one of the beneficiaries of the legislation of Congress. Long before and at the time the lands were entered "in trust for the several use and benefit of the occupants thereof," Smith was in the actual occupation of the lot, and has since remained in possession of it. He is, therefore, justly entitled to the benefits which Congress designed to bestow.

2. The decree by default in the foreclosure suit was a nullity. The service of process by the marshal of the United States conferred upon the court no jurisdiction of the defendants. He can only act in cases where the United States is concerned (*Clinton et al.* v. *Englebrecht*, 13 Wall. 434), and his sale of the lot under the decree passed no title.

*Mr. Z. Snow* and *Mr. E. D. Hoge, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

There can be no question that under the act of Congress of March 2, 1867 (14 Stat. 541), Smith had an equitable interest in the premises in controversy which he could sell and convey. *Phyfe* v. *Wardell*, 5 Paige (N. Y.), 268; *Armour* v. *Alexander*, 10 id. 571; *Tredgill* v. *Pintard*, 12 How. 24. Until the mayor of Salt Lake City made the entry at the proper land-office, which he was authorized to make, the legal title was in the United States. By the entry it became vested in the mayor. He held the entire tract so entered "in trust for the several use and benefit of the occupants thereof, according to their respective interests." Such is the language of the statute.

The act does not prohibit a sale, but is silent upon the subject. Smith mortgaged to Bernhisel, and subsequently to Linforth. Bernhisel foreclosed, making Smith and Linforth defendants. Under a decree of the proper court, the premises were sold by the United States marshal. Jennings became the purchaser, and thereafter sold and conveyed to the appellant, by deed bearing date March 9, 1872. On the 24th of May, 1872, the appellant filed her claim pursuant to law in the proper probate court, for a judgment to enable her to obtain a deed from the mayor for the premises. Smith had before filed a claim also. On the 10th of July, 1872, the Probate Court decided in favor of Smith. She thereupon appealed to the District Court. The decision of the probate judge was affirmed. She then appealed to the Supreme Court of the Territory. The judgment of the Probate Court was again affirmed, and she thereupon removed the case by appeal to this court.

The validity of the mortgage to Bernhisel is not controverted, nor is it denied that, if the foreclosure and sale divested Smith's title, the judgment of the Supreme Court of the Territory was erroneous, and must be reversed.

It was held by that court that the foreclosure proceedings were void, for two reasons : —

*First,* That the mortgage was not sufficiently described in the complainant's petition to warrant the decree *pro confesso,* which was taken.

*Second,* That the United States marshal, by whom the original process in the case was served, the sale made, and the deed to the purchaser executed, had no authority to act in any wise in the premises.

The first objection is clearly untenable, and has not been insisted upon here. We therefore pass it by without further notice.

The second objection is necessary to be considered.

There were two marshals in the Territory, — one appointed by the national government, the other under a territorial law. The former was called the marshal of the United States, the latter, marshal of the Territory.

A question arose which officer was entitled to serve the processes issuing from the local courts. A case was brought

in the proper district court to settle their respective claims. On the 12th of May, 1870, that court decided that the right and authority belonged exclusively to the marshal of the United States. The Supreme Court of the Territory, at its October Term in the same year, affirmed this judgment. Such was then understood to be the law, and the marshal of the United States proceeded in the performance of his official functions, having the field to himself, until the subject came under the consideration of this court in *Clinton et al.* v. *Englebrecht*, 13 Wall. 434. It was then held (on the 15th of April, 1872) that the marshal of the United States had such authority only in cases where the United States were concerned.

It will thus be seen that the period of his recognized right and of its uninterrupted exercise extended from May 12, 1870, to April 15, 1872. Within that time all the proceedings in the Bernhisel foreclosure case were had. The petition to foreclose was filed, the process was issued and served upon Smith, the decree was taken, the sale was made, and the marshal's deed was executed to Jennings. During all this time the marshal's acts were valid, as being those of an officer *de facto*. They were *as much so* as if they had been done by him *de jure*. These remarks apply with full force to his acts as a ministerial officer in the Bernhisel case. An officer *de facto* is not a mere usurper, nor yet within the sanction of law, but one who, *colore officii*, claims and assumes to exercise official authority, is reputed to have it, and the community acquiesces accordingly. *Wilcox* v. *Smith*, 5 Wend. (N. Y.) 231; *Gilliam* v. *Reddick*, 4 Ired. (N. C.) L. 368; *Brown* v. *Lunt*, 37 Me. 423. Judicial as well as ministerial officers may be in this position. Freeman on Judgments, sect. 148. The acts of such officers are held to be valid because the public good requires it. The principle wrongs no one. A different rule would be a source of serious and lasting evils.

The marshal's sale and deed to Jennings extinguished the entire right of Smith to the premises. Thereafter he stood to them in the relation of a stranger. All the title which he possessed when the mortgage was executed passed from him to Jennings, and from Jennings to the appellant.

The territorial law of Utah of Feb. 17, 1869 (Compiled

Laws of Utah, 379), authorized to be passed by the act of Congress before mentioned, gave to the party " *entitled* to the occupancy or possession," as well as to the " occupant or occupants," the right to apply for the judgment by the Probate Court, upon which, when rendered, the mayor was to execute his deed. If this were not so, the right would be clearly within the equity of the act of Congress, and conferred by it.

The rejection of the appellant's claim and the adjudication in favor of Smith, who had not then a shadow of right to the premises, by the Probate Court was, therefore, a gross error, and the Supreme Court of the Territory repeated it by affirming the judgment.

The judgment of the latter court will, therefore, be reversed, and the cause remanded with directions to proceed in conformity to this opinion; and it is

*So ordered.*

NOTE. — *Hussey* v. *Merritt*, appeal from the Supreme Court of the Territory of Utah, was argued at the same time and by the same counsel as was the preceding case. MR. JUSTICE SWAYNE stated that the opinion in that case was decisive of this. The cardinal question here, as there, was as to the validity of the proceedings touching the sale under the Bernhisel mortgage, and the result must be the same.