Joyce A. PENDLETON, Plaintiff
and Appellee,

v.

Robert L. PENDLETON, Defendant
and Appellant.

No. 950314–CA.

Court of Appeals of Utah.

May 31, 1996.

Kathryn Schuler Denholm, Salt Lake City,
for Appellant.

J. Bruce Reading and Wesley D. Hutchins,
Salt Lake City, for Appellee.

Before ORME, P.J., and DAVIS and
BILLINGS, JJ.

## OPINION

ORME, Presiding Judge:

Robert Pendleton appeals the trial court's
denial of his petition to terminate alimony
based on his claim that his ex-wife is cohabi-
tating with a person of the opposite sex. We
reverse.

## PROCEDURAL HISTORY

Robert Pendleton and Joyce Pendleton
were divorced in March 1991. Joyce was
awarded monthly alimony. Paragraph 13 of
the divorce decree states that Robert is to

pay alimony until Joyce's death, remarriage, or cohabitation. The divorce decree provision reflects the requirement of Utah Code Ann. § 30–3–5(6) (1989) that

> [a]ny order of the court that a party pay alimony to a former spouse terminates upon establishment by the party paying alimony that the former spouse is residing with a person of the opposite sex. However, if it is further established by the person receiving alimony that that relationship or association is without any sexual contact, payment of alimony shall resume.[1]

In August 1993, Robert became aware that Joyce had entered into a relationship with Bill. Suspecting Joyce and Bill were cohabiting, Robert filed a petition to terminate alimony in October 1993, ceased making alimony payments to Joyce, and deposited the alimony payments otherwise due into an escrow account pending the resolution of his petition.

The trial court found that Bill was not "residing" with Joyce and, therefore, that alimony should not be terminated. The court concluded that "residence" required "some sort of duration" and because Bill's sharing of Joyce's residence was for a temporary period of time, Bill was not a resident. The court did not make clear why it regarded the arrangement as temporary, a characterization that is somewhat curious in view of the fact it had gone on for some time and was still going on as of the time of trial, albeit with less consistency.

## STANDARD OF REVIEW

■ Whether Joyce was "residing" with Bill is a mixed question of fact and law. *Haddow v. Haddow,* 707 P.2d 669, 671 (Utah 1985). While we defer to the trial court's factual findings unless they are shown to be clearly erroneous, we review its ultimate conclusion for correctness. *See id.*

## APPLICABLE LAW

■ The issue in this case is whether or not Bill "resided" with Joyce. "Common residency means the sharing of a common abode that both parties consider their principal domicile for more than a temporary or brief period of time." *Haddow v. Haddow,* 707 P.2d 669, 672 (Utah 1985). It implies continuity, not simply a habit of visiting or a sojourn. *Id.* at 673. In *Haddow,* the Utah Supreme Court determined that Ms. Haddow did not share a common residence with Mr. Hudson although the two spent considerable time together. *Id.* at 673–74. The Court focused on whether Mr. Hudson traveled freely in and out of Ms. Haddow's home. *Id.* at 673. The two determinative facts were that Mr. Hudson had no key to the house and that he did not spend time there when Ms. Haddow was away. The Court explained its focus on these facts as follows:

> These circumstances seem particularly significant on the question of whether Mr. Hudson was living with appellant, since a resident will come and go as he pleases in his own home, while a visitor, however regular and frequent, will schedule his visits to coincide with the presence of the person he is visiting.

*Id.* Furthermore, the Court determined that the presence or absence of Hudson's portable possessions in Ms. Haddow's home, such as clothes, toiletries, furniture, and photo albums, were not of determinative significance. Finally, the Court stated that the sharing of living expenses is not a requisite element of residency. *Id.*

■ Although neither the presence of portable possessions nor the sharing of living expenses is dispositive, either may nonetheless be indicative of maintaining a shared household and be regarded as some evidence of residency. *Sigg v. Sigg,* 905 P.2d 908, 918 (Utah App.1995). For example, while it is

---

**1.** The version of the statute in force at the time of this action uses the term "residing" but makes clear that both residency and sexual contact are required to terminate alimony. Utah Code Ann. § 30–3–5(6) (1989). The divorce decree refers to "cohabitation" as a basis for terminating alimony, as does the most recent version of the statute. Utah Code Ann. § 30–3–5(9) (Supp.1995). The semantic distinction is inconsequential. Cohabitation is comprised of the same two elements: (1) common residency and (2) sexual contact evidencing a conjugal association. *Haddow v. Haddow,* 707 P.2d 669, 672 (Utah 1985). In this case, sexual contact has been admitted. Therefore, we need only be concerned with the residency element.

not important if the two share assets in a general sense, it may indeed be relevant if one party pays the other's mortgage, the insurance on his or her house, or the utility bills—actions which would be quite atypical for a mere visitor, even a regular and frequent visitor. *See Haddow,* 707 P.2d at 673–74. In *Sigg,* the court regarded it as some evidence of residency that the two shared living expenses, ate together and shared food expenses, and kept clothing in the same home. *Sigg,* 905 P.2d at 918.

## ANALYSIS

■ In this case, the largely undisputed facts establish that Bill resided with Joyce. Although his job in real estate required much out-of-town travel, he stayed with Joyce ninety percent of the time when he was in town, spending four to five nights during such weeks at her home. Bill had his own key to Joyce's home. He came and went from Joyce's home three to four times daily, even when she was not there. Joyce had ostensibly given him the key so that he could check on the house to prevent theft and wrongdoing by Joyce's twenty-year-old son, who lived with her until a "physical confrontation over drugs" caused him to move out. However, she did not retrieve the key from Bill or terminate his free access to the home after her son was incarcerated a few months later.[2]

Although the two main factors found by the *Haddow* Court to establish residence are clearly present in this case, namely that Bill had a key to the house and that he spent time there when Joyce was away, other factors support the conclusion that Bill was a resident in Joyce's home and not merely a guest. Joyce and Bill ate almost all meals together when Bill was in town—invariably at Joyce's house if not dining out. In addition, Bill kept clothing and other personal effects at Joyce's home. (He also kept some of his belongings at his apartment, some in his car, and some at the home of his estranged wife.)

A couple of factors relied on by Joyce in support of her position merit comment. While it is true that Bill did not assist in any way with the cost of maintaining Joyce's home, the sharing of living expenses is not required to show residency in this context. *See Haddow,* 707 P.2d at 673. Nor is it dispositive that, *at the time of trial,* Bill had no clothes or other possessions in the home. The trial court correctly minimized this easily arranged fact, focusing instead on the several-month period preceding trial.

## CONCLUSION

Bill does indeed reside with Joyce for purposes of alimony analysis. This, combined with ongoing sexual contact, is enough to terminate Robert's obligation to pay alimony under the divorce decree. We reverse the judgment appealed from.[3]

DAVIS, Associate P.J., and BILLINGS, J., concur.

---

2. Even though Bill maintained his own apartment for a time, he rented it only one day prior to the filing of Robert's petition. The trial court suspected that Bill rented the apartment knowing of the imminency of the petition, questioned the "genuineness" of the lease, and discounted the significance of the apartment in its analysis. There is evidence to suggest that Bill used the apartment as more of an office than a personal residence. When in town, Bill spent only one to two hours a day at the apartment, checking messages and mail. Bill's nephew actually lived in the apartment, although Bill claimed this was only because it was a "very bad neighborhood" and he wanted the nephew to keep an eye on it so that "nothing would come up missing." Bill slept at the apartment on only rare occasions. When he did, he was usually in Joyce's company.

3. Joyce also claims Robert should pay attorney fees and costs on appeal pursuant to Utah Code Ann. § 30–3–3(1) (1995), which allows the court to award costs and attorney fees incurred in defending an action for alimony. However, due to our disposition of this case, the claim for attorney fees is denied. *See Carter v. Carter,* 584 P.2d 904, 906 (Utah 1978).