2002 UT App 381

**Diane GARCIA, Respondent and Appellee,**

v.

**Amado GARCIA, Petitioner and Appellant.**

No. 20010656–CA.

Court of Appeals of Utah.

Nov. 15, 2002.

Michael F. Olmstead, Ogden, for Petitioner.

Diane Garcia, La Grande, Oregon, Respondent Pro Se.

Before JACKSON, P.J., and GREENWOOD and ORME, JJ.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Appellant Amado Garcia appeals the district court's denial of his motion for summary judgement, which sought termination of alimony to his ex-wife, Appellee Diane Garcia. We reverse and remand.

## BACKGROUND

¶ 2 On March 2, 1999, Amado filed a Verified Petition to Modify Decree of Divorce. Diane filed an Answer to the petition, but failed to respond to Amado's Request for Admissions. Thus, pursuant to rule 36(a) of the Utah Rules of Civil Procedure, Diane admitted the following facts: (1) that "she was acquainted with Kimberly Ellis"; (2) "[t]hat she and Ellis lived together at an address in Seaside, Oregon, from September 19, 1997, to December 1998"; (3) "that she and Ellis shared a bedroom, bed, and had sexual contact at that residence during that period of time"; (4) that she "and Ellis shared the living expenses at that residence during that period of time"; (5) that she "and Ellis shared an address in Cannon Beach, Oregon, from December 1998 to March 1999"; (6) "that she and Ellis shared a bedroom, bed, and had sexual contact at that residence during that period of time"; and (7) that she "and Ellis shared the living expenses at that residence during that period of time."

¶ 3 Based on these facts, Amado filed a motion for summary judgment, contending "that Petitioner has admitted a relationship constituting cohabitation, and therefore, the [district court should have] enter[ed] an [o]rder terminating alimony payments as of August 1997 on the grounds that [Diane] entered into a cohabitation relationship on or about that date." The district court denied Amado's motion for summary judgment. It ruled that had Ellis and Diane been of the opposite sex, their conduct would have clear-

ly been viewed as cohabitation sufficient to terminate alimony. However, the court concluded "that the plain meaning of 'cohabitation' requires a sexual relationship between members of the opposite sex." Amado appeals the district court's denial of his motion for summary judgment.

## ISSUE AND STANDARD OF REVIEW

¶ 4 Amado challenges the district court's interpretation of "cohabitation" as contained in Utah Code Ann. § 30–3–5(9) (1998). "The trial court's interpretation of this statute is a question of law that we review for correctness." *Department of Natural Res. v. Huntington–Cleveland Irrigation Co.*, 2002 UT 75,¶ 12, 52 P.3d 1257. Moreover, "in construing any statute, we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous." *Gull Lab., Inc. v. State Tax Comm'n*, 936 P.2d 1082, 1084 (Utah Ct.App.1997) (internal quotations and citations omitted).

## ANALYSIS

¶ 5 Utah Code Ann. § 30–30–5(9) (1998) provides: "Any order of the court that a party pay alimony to a former spouse terminates upon establishment by the party paying alimony that the former spouse is cohabitating with another person." In *Pendleton v. Pendleton*, 918 P.2d 159 (Utah Ct. App.1996), we ruled that "[c]ohabitation is comprised of ... two elements: (1) common residency and (2) sexual contact evidencing a conjugal association." *Id.* at 160 n. 1. (citing *Haddow v. Haddow*, 707 P.2d 669, 672 (Utah 1985)). The trial court acknowledged that Diane and Kimberly Ellis met the residency

requirement. That conclusion is not challenged on appeal.

¶ 6 Regarding the second element, the trial court concluded that Diane's " 'same sex' relationship cannot, as a matter of law, amount to 'cohabitation.' " We disagree. According to the plain language of the statute, alimony terminates "upon establishment by the party paying alimony that the former spouse is cohabitating *with another person.*" Utah Code Ann. § 30–3–5(9) (emphasis added). The plain language of the statute requires only that the alimony payee cohabit "with another person," and contains no requirement that the other person be a member of the opposite sex. *Id.; see also In re Marriage of Weisbruch*, 304 Ill.App.3d 99, 237 Ill.Dec. 809, 710 N.E.2d 439 (1999) (holding same-sex relationship terminated alimony under applicable statute, which terminated alimony " 'if the party receiving maintenance cohabits *with another person* on a resident, continuing conjugal basis.' " (Emphasis added) (Quoting 750 ILCS 5/510(c) (West 1996)).); *see generally* Robin C. Miller, Annotation, *Effect of Same-sex Relationship on Right to Spousal Support*, 73 A.L.R. 5th 599 (1999). Nor does the test outlined in *Pendleton* and *Haddow* to determine whether a party was cohabiting require the cohabiting parties to be of the opposite sex.[1] *See Haddow*, 707 P.2d at 672.

¶ 7 Thus, we conclude that Diane's admission "that she and Ellis shared a bedroom, bed, and had sexual contact" meets the second element necessary to establish cohabitation. Accordingly, the trial court erroneously concluded "that the plain meaning of

---

1. The district court concluded that "had these individuals been of the opposite sex, their conduct would be viewed as 'participating in a relatively permanent sexual relationship akin to that generally existing between husband and wife.' However, there are substantial legal differences between a man and a woman having common residency and 'sexual conduct evidencing a conjugal association' and a 'same sex' common residency and 'sexual conduct evidencing a conjugal association.' " (Quoting *Haddow v. Haddow*, 707 P.2d 669, 672 (Utah 1985)). As support for this proposition, the district court only points out that "same sex" couples are not afforded the same legal rights as those of married couples. We fail to see how the differing legal rights of married

and same-sex couples necessitates the statutory interpretation that same-sex couples may not have sexual contact as contemplated by *Haddow* and *Pendleton*. Moreover, our supreme court has not explained which similarities a "relatively permanent sexual relationship" must have in order to be "akin to that generally existing between husband and wife" for purposes of Utah Code Ann. § 30–3–5(9) (1998). *Haddow*, 707 P.2d at 672. Thus, we have no basis to assume that opposite sex must be one of those similarities. Accordingly, we cannot conclude, as the district court did, that an alimony payee's "sexual contact" for purposes of determining cohabitation must be with a member of the opposite sex.

'cohabitation' requires a sexual relationship between members of the opposite sex."

## CONCLUSION

¶ 8 The trial court erroneously concluded "that the plain meaning of 'cohabitation' requires a sexual relationship between members of the opposite sex." Thus, we reverse the trial court's denial of Amado's motion for summary judgment and remand for proceedings consistent with this opinion.

¶ 9 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.