2010 UT App 394

**Robert PETT, Petitioner and Appellant,**

v.

**BRIGHAM CITY CORPORATION, a local municipality; Box Elder County Corporation, a local municipality; and Honorable David Marx, a First District Justice Court Judge, Respondents and Appellees.**

No. 20090620–CA.

Court of Appeals of Utah.

Dec. 30, 2010.

Rehearing Denied Feb. 9, 2011.

**760**

Charles A. Schultz, Brigham City, for Appellant.

Stephen R. Hadfield and Michael E. Christiansen, Brigham City, for Appellees.

Before Judges McHUGH, VOROS, and ROTH.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Robert Pett appeals the district court's denial of his Petition for Extraordinary Relief against Brigham City, Box Elder County, and Justice Court Judge David Marx (collectively, the Appellees), which requested that the court declare void all of the rulings of Judge Marx. We affirm in part and reverse in part.

1. Because Mr. Schultz was involved in the events leading to Mr. Pett's misdemeanor citation, Brigham City asserted that he "should be deemed [a] co-defendant[ ]" and was a "necessary witness who should be disqualified from participating as counsel."

2. In his ruling on Mr. Pett's Petition for Extraordinary Relief, Judge Allen also indicated his intention to refer Mr. Schultz to the Utah Bar Association for representing outdated statutory language as current law, for making numerous

## BACKGROUND

¶ 2 On July 17, 2008, Mr. Pett was issued a citation by the Brigham City Animal Control for excessive dogs or cats on his property, domestic fowl running at large, and nuisance. On July 26, 2008, Mr. Pett appeared and pleaded not guilty to the charges.

¶ 3 Sometime after Mr. Pett's appearance, he submitted a motion to disqualify Box Elder Justice Court Judge Kevin Christensen. Judge Christensen granted Mr. Pett's motion and assigned Judge Marx, a current justice court judge in Hyde Park, Cache County, to the case as a temporary justice court judge. On September 16, 2008, Brigham City submitted a motion to disqualify Mr. Pett's counsel, Charles A. Schultz,[1] which Judge Marx granted on or about October 16, 2008.

¶ 4 On December 1, 2008, Mr. Pett filed a Petition for Extraordinary Relief with the district court, alleging that Judge Marx had never officially been appointed as a justice court judge in Box Elder County and that, therefore, all of his previous rulings were invalid. On December 8, 2008, the chairperson of the Box Elder County Commission (the Chairperson) appointed Judge Marx as a temporary judge for the Box Elder Justice Court, and the Commission ratified the appointment. On June 15, 2009, District Court Judge Kevin Allen dismissed Mr. Pett's Petition for Extraordinary Relief, finding that Judge Marx did not exceed his jurisdiction while acting as a temporary justice court judge in Box Elder County.[2] Mr. Pett's underlying criminal misdemeanor case is still pending before Judge Marx in the Box Elder Justice Court, and the trial has been postponed pending the outcome of this appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Mr. Pett argues that the district court should have granted his Petition for

citation errors in his trial memoranda that were misleading to the court, and for refusing to refer to judges by their proper title of "Judge." On appeal, Mr. Schultz has inexplicably continued these objectionable practices. Throughout the briefs, he refers to Judge Marx and Judge Christensen as "Marx" and "Christensen." Additionally, Mr. Schultz has made misleading and inaccurate assertions regarding statutory provisions. *See infra* ¶ 7.

Extraordinary Relief because the December 8, 2008 appointment of Judge Marx was not valid and Judge Marx lacked jurisdiction to make rulings both in Mr. Pett's underlying misdemeanor case and in all other cases in Box Elder County.[3] "While the decision to grant or deny extraordinary relief is within the district court's discretion, we review the legal reasoning of the court for correctness." *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 6, 207 P.3d 1221 (internal quotation marks omitted).

## ANALYSIS

I. The Chairperson Complied with the Necessary Procedures for Appointing Judge Marx as a Temporary Justice Court Judge for Box Elder County.

■ ¶ 6 Mr. Pett first argues that the district court erred in finding that Judge Marx's December 8, 2008 appointment as a temporary justice court judge for Box Elder County was valid because Box Elder County failed to comply with the requirements of Utah Code section 78A–7–202, *see* Utah Code Ann. § 78A–7–202 (2008). Specifically, Mr. Pett argues that Box Elder County failed to report the appointment of Judge Marx to the Judicial Council, that the municipal attorney did not submit a written opinion to the Judicial Council stating that Judge Marx met the statutory qualifications for office, and that the Judicial Council never certified Judge Marx as qualified to hold office. *See generally id.* (outlining the procedure for the appointment of a justice court judge). However, Mr. Pett confuses the procedures necessary for the initial appointment of a permanent justice court judge with the procedures necessary to appoint a temporary justice court judge in situations where a permanent judge is absent or disqualified. *See id.* § 78A–7–208 (providing for the appointment of a temporary justice court judge); *see also* Utah R.Crim. P. 29(c)(2).

¶ 7 Rule 29(c)(2) of the Utah Rules of Criminal Procedure provides that when a justice court judge is disqualified, another judge shall be assigned "in accordance with Utah Code Ann. § 78–5–138." Utah R.Crim. P. 29(c)(2). Mr. Pett erroneously asserts that section 78–5–138 was renumbered as section 78A–7–202, which sets forth the procedures for the appointment of permanent justice court judges, *see* Utah Code Ann. § 78A–7–202. However, section 78–5–138 was actually renumbered as section 78A–7–208, which addresses the appointment of temporary justice court judges. *See id.* § 78A–7–208 & amend. notes; *see also id.* § 78A–7–202 amend. notes (indicating that section 78A–7–202 is a renumbering of former section 78–5–134).

¶ 8 As indicated in rule 29(c)(2) and the amendment notes to section 78A–7–208, the procedure for appointing a temporary justice court judge is governed by Utah Code section 78A–7–208, which states, "If a justice court judge is absent or disqualified, the appointing authority may appoint another justice court judge currently holding office within the judicial district to serve as a temporary justice court judge," *id.* § 78A–7–208. The plain language of the statute provides that Judge Marx needed only to hold office within the First District and to be appointed by Box Elder County's appointing authority in order to serve as a temporary justice court judge in Box Elder County. *See Kasteler v. Gibbons*, 2007 UT App 267U, para. 4, 2007 WL 2206912 (mem.) (per curiam) (rejecting appellant's assertion "that appointment of a temporary, substitute justice court judge must comply with the same procedures as for appointment of a permanent judge" and identifying section 78–5–138 (now section 78A–7–208) as the only provision relevant to the appointment of temporary justice court judges). *See generally Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 47, 164 P.3d 384 ("When the language of the statute

---

3. Because Mr. Pett lacks standing to assert the rights or claims of other parties to justice court proceedings, we limit our analysis to the validity of the orders issued by Judge Marx in this case. *See generally Council of Holladay City v. Larkin*, 2004 UT 24, ¶ 27, 89 P.3d 164 ("Our law on

standing requires that a [p]laintiff must be able to show that he has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute." (alteration in original) (internal quotation marks omitted)).

is plain, other interpretive tools are not needed."). The Chairperson, as the appointing authority for Box Elder County, *see* Utah Code Ann. § 78A–7–202(1)(a)(i), appointed Judge Marx as a temporary justice court judge on December 8, 2008. Judge Marx was already serving as a permanent justice court judge for Hyde Park, which is part of the First District. Therefore, Judge Marx's appointment satisfied the express requirements of the statute. *See id.* § 78A–7–208.

¶ 9 In addition to being contrary to the express terms of section 78A–7–208, Mr. Pett's argument that Judge Marx's appointment must also comply with the provisions of section 78A–7–202 would serve no legislative purpose. All of the procedures identified in section 78A–7–202 had to be satisfied when Judge Marx was appointed as a permanent justice court judge for Hyde Park, and Mr. Pett does not contend that they were not. Thus, Judge Marx has been deemed qualified to serve as a justice court judge, and duly appointed and certified under section 78A–7–202. To require a county to comply with these same procedures each time a permanent justice court judge is disqualified or absent would be redundant and create unnecessary delay. Moreover, such an interpretation of section 78A–7–202 would render section 78A–7–208 superfluous. *See generally State v. Bluff*, 2002 UT 66, ¶ 35, 52 P.3d 1210 (rejecting an interpretation of a statute that "would render portions of the statute redundant, superfluous, and inoperable"). We therefore hold that section 78A–7–202 has no relevance to the validity of Judge Marx's appointment as a temporary justice court judge.

II. Judge Marx Was Properly Appointed to Hear Mr. Pett's Case Under Section 78A–7–208.

█ ¶ 10 Mr. Pett next contends that the temporary appointment of Judge Marx is invalid, even under section 78A–7–208, because the Chairperson failed to set any limits on the appointment. Mr. Pett maintains that the Chairperson should have either limited the length of Judge Marx's appointment or specifically assigned Judge Marx to Mr. Pett's case, reasoning that the statute's use

of the term "temporary" precludes the type of "indefinite" appointment made by the Chairperson in this case. In contrast, the Appellees contend that the appointment of a temporary justice court judge is inherently limited to circumstances where the assigned judge is absent or disqualified. According to the Appellees, Judge Marx's service as the justice court judge on Mr. Pett's case was triggered by the disqualification of Judge Christensen and will terminate with the case. Furthermore, the Appellees claim that Mr. Pett lacks standing to challenge Judge Marx's appointment to Box Elder County cases in which Mr. Pett is not a party. We agree with the Appellees.

A. The Appointing Authority Need Not Specify a Time Limit on the Appointment of a Temporary Justice Court Judge.

█ ¶ 11 "[I]n construing any statute, we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous." *Garcia v. Garcia*, 2002 UT App 381, ¶ 4, 60 P.3d 1174 (internal quotation marks omitted). Section 78A–7–208 provides, "If a justice court judge is absent or disqualified, the appointing authority may appoint another justice court judge currently holding office within the judicial district to serve as a temporary justice court judge." Utah Code Ann. § 78A–7–208 (2008). The plain language of section 78A–7–208 contains no requirement that the appointing authority specify the length of a temporary justice court judge's appointment. Furthermore, the statutory language is capable of two reasonable interpretations on this point.

¶ 12 The statute begins, "If a justice court judge is absent or disqualified. . . ." *Id.* It then provides that, under those circumstances, the appointing authority "may appoint" a justice court judge from another county within the district "to serve" as a temporary justice court judge. *See id.* Thus, the absence or disqualification of the permanent judge is a necessary predicate to the power to appoint and also defines the scope of the temporary judge's service. However, that clause does not necessarily

limit the length of the temporary justice court judge's appointment to serve during such temporary absences as may arise. Indeed, the statute does not authorize the temporary "appointment" of a justice court judge; it authorizes the appointment of "a temporary justice court judge." *See id.* Thus, the statute could reasonably be interpreted so that "temporary" refers to the duration of each particular need to cover the unavailability of the permanent judge due to the judge's absence or the judge's disqualification, as opposed to the length of the appointment to cover such temporary periods of unavailability. Each individual need is necessarily limited by the return of the permanent justice court judge or the conclusion of the case in which that judge is disqualified. Alternatively, the first clause could be read to limit both the power to appoint and the authority to serve once appointed, as suggested by Mr. Pett.

¶ 13 "When interpreting statutes, we look first to the plain language of the statute, and give effect to that language unless it is ambiguous. In doing so, our primary goal is to evince the true intent and purpose of the [l]egislature." *Salt Lake Cnty. v. Holliday Water Co.,* 2010 UT 45, ¶ 27, 234 P.3d 1105 (citation and internal quotation marks omitted). Because section 78A–7–208 is "susceptible to more than one reasonable interpretation," it is ambiguous. *See Hutter v. Dig-It, Inc.,* 2009 UT 69, ¶ 49, 219 P.3d 918. To resolve that ambiguity, "we use extrinsic interpretative tools such as policy and legislative intent to guide our analysis." *R & R Indus. Park, LLC v. Utah Prop. & Cas. Ins. Guar. Ass'n,* 2008 UT 80, ¶ 25, 199 P.3d 917. Our application of those tools convinces us that the legislature did not intend to require the appointing authority to make a new appointment each time there is a need to cover the unavailability of the permanent justice court judge due either to disqualification or absence.

¶ 14 Once the appointing authority of a county needing the assistance of a temporary justice court judge has accepted a justice court judge from the same district, who has been vetted during the initial appointment process in the judge's permanent county, *see*

Utah Code Ann. § 78A–7–202, we can see no legislative purpose in asking that appointing authority to reconsider the temporary judge's acceptability every time the permanent judge has a conflict, illness, or vacation. *Cf. People v. Fleming,* 185 Mich.App. 270, 460 N.W.2d 602, 605 (1990) (upholding an administrative order making open-ended appointments of visiting judges, reasoning that there was "little to be gained by the administrative inconvenience of requiring" the court to enter "a series of thousands of individual orders" appointing visiting judges in each individual case). Furthermore, to impose such a requirement would unnecessarily delay cases and needlessly burden the appointing authority with a redundant exercise. *See generally Miller v. State,* 2010 UT App 25, ¶ 12, 226 P.3d 743 ("[W]here a literal reading of the plain language at issue creates an absurd, unreasonable, or inoperable result, we assume the legislature did not intend that result . . . ." (internal quotation marks omitted)). The burden and delay of such a requirement is particularly apparent in the context of smaller communities where it is more likely that the permanent justice court judge will be familiar with the parties, thereby necessitating disqualification with some frequency.

¶ 15 Additionally, the body charged by the legislature with administering the justice court system interprets the statute to allow counties to appoint justice court judges from other counties within the same district to the ongoing role of temporary judge. The state court administrator is the "chief administrative officer of the [Judicial Council]," *see* Utah Code Ann. § 78A–2–105, and has been charged by the legislature with the responsibility to "develop uniform procedures for the management of court business," *see id.* § 78A–2–107(7). In carrying out those duties, the state court administrator has published a justice court manual, which is provided to all justice court judges. *See id.* § 78A–7–214. This manual indicates that "[t]he appointing authority often appoints replacement judges in advance so that a judge can fill-in quickly when a situation arises. . . . The temporary judge acts in all cases in which the original judge is disqualified." Justice Court Manual, General Information,

§ 5, at 11 (2008), *available at* http://www. utcourts.gov/courts/just/benchbook/Justice_ Benchbook.pdf. We see nothing in this practice that is inconsistent with the plain language of the statute, and we thus consider it of some guidance to our analysis. *Cf. Nelson v. Betit,* 937 P.2d 1298, 1306 (Utah Ct.App. 1997) (finding persuasive an "authoritative, administrative interpretation of [a] statute the [interpreting agency] had been delegated to implement" because it was "reasonable and consistent with the overall design and purpose" of the legislation).

¶ 16 Based on the language and the legislative goals and public policy to be furthered by the statute, we conclude that section 78A–7–208 permits a county to appoint a temporary justice court judge to serve as needed to cover the temporary absence or disqualification of a permanent justice court judge. The appointing authority may revoke the appointment of the temporary justice court judge when it no longer requires or approves of that judge's service, or for any other reason.

¶ 17 Next, we reject Mr. Pett's argument that such an indefinite appointment violates Utah law requiring that judges be subject to retention elections, *see* Utah Code Ann. § 20A–12–201 (Supp.2010). Only judges "currently holding office within the judicial district" or meeting the supreme court's requirements to be a senior justice court judge under rule 11–203 of the Utah Rules of Judicial Administration are qualified to be temporary justice court judges. *See* Utah Code Ann. § 78A–7–208 (2008); *see also* Utah R. Jud. Admin. 11–203 (outlining the "qualifications, term, authority, appointment and assignment for senior justice court judges"). Both current justice court judges and senior justice court judges must submit to retention election. *See* Utah Code Ann. § 20A–12–201; Utah R. Jud. Admin. 11–203(1)(a)(i). Because a temporary justice court judge's appointment is dependent on his or her status as a current or senior judge in the judicial district, the judge's appointment as a temporary judge is limited by the term of the judge's regular appointment. If the judge's regular appointment as either a current or senior judge in the district expires for any reason, so does the judge's appointment as a

temporary judge in a neighboring county. Thus, Judge Marx is subject to retention elections, contrary to Mr. Pett's assertion otherwise.

**B. Judge Marx Was Appointed for the Specific Purpose of Hearing Mr. Pett's Case.**

¶ 18 Even if we did not read the statute to allow for the appointment of temporary conflict judges, it can be inferred from the record that Judge Marx was appointed on December 8, 2008, to give him authority over Mr. Pett's case. Thus, even if a temporary justice court judge must be appointed on a case-by-case basis as alleged by Mr. Pett, Judge Marx has the authority to act as a temporary justice court judge in Mr. Pett's case.

¶ 19 When requesting the Chairperson's approval of Judge Marx, Judge Christensen indicated that the deficiency in Judge Marx's appointment had "been brought to [Box Elder County's] attention through a pending case," but that Judge Marx's authority had "never been questioned" previously. Mr. Pett's Petition for Extraordinary Relief challenging Judge Marx's authority was filed on December 1, 2008, just seven days before the Chairperson formalized Judge Marx's appointment. Additionally, Mr. Pett and his attorney attended the Box Elder County Commission meeting and were identified for the Chairperson. It is reasonable to infer from this information that Mr. Pett's was the "pending case" Judge Christensen referred to during the commission meeting and that the purpose of the appointment was to have Judge Marx preside over Mr. Pett's case due to Judge Christensen's disqualification.

**III. Mr. Pett Can Show No Prejudice from Any Interim Orders Entered by Judge Marx Prior to His Proper Appointment.**

■ ¶ 20 Finally, Mr. Pett argues that even if Judge Marx was validly appointed in December 2008, any rulings made prior to that appointment are void for lack of jurisdiction. The Appellees do not dispute Mr. Pett's contention that Judge Marx was not validly appointed prior to December 8, 2008,

but maintain that Judge Marx's actions in Mr. Pett's misdemeanor case were nevertheless valid because Judge Marx was a de facto judge.

¶ 21 A person is a de facto judge where he "holds and exercises the office of a judge under color of lawful authority and by a title valid on its face, though he has not full right to the office," *Salt Lake City v. Ohms,* 881 P.2d 844, 853 (Utah 1994) (internal quotation marks omitted), and where he " 'is reputed to have [the authority], and the community acquiesces accordingly,' " *Vance v. Fordham,* 671 P.2d 124, 130 (Utah 1983) (quoting *Hussey v. Smith,* 99 U.S. 20, 24, 25 L.Ed. 314 (1878)). For example, a judge who " 'was appointed under an unconstitutional statute, or by an usurper of the appointing power, or has not taken the oath of office,' " *Ohms,* 881 P.2d at 853 (emphasis omitted) (quoting *Black's Law Dictionary* 841 (6th ed.1990)), is a de facto judge. The actions of a de facto judge are "as binding ... as though [the judge] had been a judge de jure." *Sutton v. Thompson (In re Thompson's Estate),* 72 Utah 17, 269 P. 103, 120 (Utah 1927); *see also In re R.N.J.,* 908 P.2d 345, 348 (Utah Ct.App.1995) ("In the interest of justice, the actions of a de facto official are considered valid as to third persons and the public." (internal quotation marks omitted)).

¶ 22 A justice court judge has lawful authority to hear cases within the judge's jurisdiction, *see* Utah Code Ann. §§ 78A–7–104, –106 (2008 & Supp.2010) (outlining the authority of a justice court judge), and the title of temporary justice court judge is valid on its face, *see id.* § 78A–7–101 (2008) (creating justice courts and designating the office of justice court judge). Judge Marx exercised the authority of a temporary justice court judge in Mr. Pett's case after being asked to do so by Judge Christensen. Because section 78A–7–208 requires that a temporary justice court judge be appointed by the Chairperson, Judge Marx was appointed by

"an usurper of the appointing power," *Ohms,* 881 P.2d at 853 (internal quotation marks omitted). However, Judge Marx was properly appointed by the Chairperson on December 8, 2008. Until this appointment, Judge Marx did not have full right to the office because Judge Christensen lacked the power to appoint him. Nevertheless, Judge Marx's authority was void only "because there was a want of power in the ... appointing body," *see id.* at 854 (internal quotation marks omitted). Thus, he may qualify as a de facto judge, thereby ratifying his acts prior to his official appointment, if there was "public acquiescence in the authority." [4] *State v. Menzies,* 845 P.2d 220, 226 (Utah 1992) (holding that a court reporter was a de facto official where she "assumed authority ... under color of a valid appointment, and the public acquiesced in her authority"); *see also Vance,* 671 P.2d at 131 & n. 5 (holding that for an individual to be a de facto official the community must acquiesce accordingly); *State v. Gambrell,* 814 P.2d 1136, 1139 (Utah Ct.App.1991) ("[T]he acts of one who assumes official authority and exercises duties under color of a valid appointment or election are valid where the community acquiesces to his authority.").

¶ 23 Here, community acquiescence is demonstrated by the fact that Judge Marx had previously heard "half a dozen" cases in Box Elder County under color of authority as a temporary justice court judge without objection. *See Menzies,* 845 P.2d at 226 (requiring "public acquiescence" in acts of de facto official); *Vance,* 671 P.2d at 131 n. 5 (defining a de facto officer as one who acts "under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action" (internal quotation marks omitted)). Nevertheless, Mr. Pett argues that he did not personally acquiesce to Judge Marx's appointment and instead "objected to [Judge] Marx's authority to act as a justice

4. Mr. Pett claims that *Holm v. Smilowitz,* 840 P.2d 157 (Utah Ct.App.1992), supports his assertion that Judge Christensen's appointment of Judge Marx could not be retroactively validated. However, *Holm* is easily distinguished. There we held that a court commissioner's judicial actions could not be cured by later ratification because the actions were "non-delegable judicial acts" that exceeded the commissioner's authority. *See id.* at 165. While proper appointment could easily validate Judge Marx's judicial actions, nothing could have validated the *Holm* commissioner's exercise of non-delegable judicial authority.

court judge in this case as soon as [Judge] Marx was appointed." *Cf. Menzies*, 845 P.2d at 223 (holding that a court reporter had de facto authority and noting that the objection to the reporter's qualifications was first made after the jury rendered its verdict); *Vance*, 671 P.2d at 131 & n. 6 (noting that the appellant did not object to the qualifications of a member of the committee which recommended revocation of his medical license at the outset of the hearing, and holding that committee member had de facto authority to serve); *In re Thompson's Estate*, 269 P. at 127–28 (holding that a district court judge had de facto authority and noting that the parties knew but did not object to the district judge's participation); *Gambrell*, 814 P.2d at 1137 (holding that the county attorney had de facto authority and noting that the objection to the county attorney's authority was first made on appeal).

¶ 24 Mr. Pett asserts that his immediate objection defeats the Appellees' claim that Judge Marx was a de facto judge here. *See generally Ohms*, 881 P.2d at 854 (citing *In re Thompson's Estate*, 269 P. at 128, favorably for the proposition that a district court judge had de facto authority to sit with the supreme court where "(1) the district judge had authority in other instances to sit with the court, and (2) the parties had knowledge of and did not object to the district judge's participation"). We agree that a party's timely objection may defeat ratification of the actions taken in that party's case under the de facto judge doctrine. *See Baker v. Maryland*, 377 Md. 567, 833 A.2d 1070, 1075–86 (2003) (defining the bounds of the de facto judge doctrine by comparing United States Supreme Court decisions and collecting cases from other jurisdictions).

¶ 25 Nevertheless, there have been no final rulings in Mr. Pett's underlying misdemeanor case; indeed, the case has been stayed pending the outcome of this appeal. The record indicates that Judge Marx granted Brigham City's request to disqualify Mr. Schultz as Mr. Pett's counsel. According to Mr. Pett, Judge Marx also denied Mr. Pett's Request for a Bill of Particulars, his Motion to Compel Discovery, and his Motion to Disqualify the prosecutor prior to his December 8, 2008 appointment. Although we agree that these orders are invalid, Mr. Pett has suffered no prejudice. Judge Marx may simply consider each of these motions on remand under the authority vested in him by the appointing authority to serve as a temporary justice court judge for Box Elder County and in Mr. Pett's case.

## CONCLUSION

¶ 26 The requirements for appointment of a temporary justice court judge are those explicitly outlined in Utah Code section 78A–7–208. A county is not also required to comply with the provisions of Utah Code section 78A–7–202 when appointing a temporary justice court judge, and the appointment need not be expressly limited to a particular case or a particular time period. Thus, the Chairperson's appointment of Judge Marx as a temporary justice court judge for Box Elder County was valid. However, because Mr. Pett timely challenged Judge Marx's authority, any pre-appointment orders in Mr. Pett's case cannot be ratified under the de facto judge doctrine and are void. Notwithstanding the invalidity of those orders, Mr. Pett has suffered no prejudice and his case may now proceed before Judge Marx.

¶ 27 Affirmed in part and reversed in part.

¶ 28 I CONCUR: STEPHEN L. ROTH, Judge.

VOROS, Judge (concurring):

¶ 29 I concur in the majority opinion except as to part II.A., in which I concur in result only.

¶ 30 I do not agree with the majority that the first sentence of the controlling statutory section is ambiguous. That sentence reads,

If a justice court judge is absent or disqualified, the appointing authority may appoint another justice court judge currently holding office within the judicial district to serve as a temporary justice court judge.

Utah Code Ann. § 78A–7–208 (2008). This sentence is constructed so that the absence or disqualification of a permanent judge is a condition precedent to the appointment of a substitute judge. A statute that reads, "If a justice court judge is absent or disqualified,

the appointing authority may appoint another justice court judge" may not, in my view, be reasonably read to authorize the appointment of another judge even if no justice court judge is absent or disqualified. Accordingly, I do not agree that the statute permits an appointing authority to appoint in advance a replacement judge to step in should a disqualification or absence arise. I do agree with the majority that this practice is a prudent one, however, and I would therefore encourage the legislature to amend section 78A–7–208 to clearly authorize it.

¶ 31 Here, because Judge Christensen was disqualified, I agree with the majority that the appointing authority was authorized to appoint Judge Marx as a temporary justice court judge.